

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

F. #2020R00926

*271 Cadman Plaza East
Brooklyn, New York 11201*

June 4, 2021

BY ECF

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    <u>United States v. Goldman Sachs (Malaysia) Sdn. Bhd.</u>, 20-CR-438 (MKB)

Dear Judge Brodie:

        The government submits this memorandum on behalf of the parties in advance of the sentencing hearing scheduled in the above-captioned matter for June 9, 2021 at 10:00 a.m. by videoconference.  As the Court is aware, on October 22, 2020, the defendant Goldman Sachs (Malaysia) Sdn. Bhd. ("Goldman Malaysia") pled guilty to a one-count information charging conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"), and its parent company, The Goldman Sachs Group, Inc. ("Goldman Sachs"), entered into a deferred prosecution agreement (the "DPA") for its role in the same conspiracy.  In connection with Goldman Malaysia's plea, the parties entered into an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the "Plea Agreement" or "PA") that sets forth an agreed-upon sentence consisting of the payment by Goldman Malaysia of $500,000 of the total criminal penalty of $2,315,088,000,[1] as well as an agreement by Goldman Sachs to ensure that its compliance program meets certain standards.  For the reasons set forth below, this sentence is sufficient but not greater than necessary to punish Goldman Malaysia for its criminal conduct.[2]

---

[1] As detailed below, the government has agreed to credit a portion of the total criminal penalty against amounts paid by Goldman Sachs to resolve other domestic and international investigations into the company for the same criminal conduct.

[2] Goldman Malaysia will be represented at the sentencing hearing by Kathryn Ruemmler, General Counsel of Goldman Sachs, pursuant to a Certificate of Corporate Resolutions attached hereto as Exhibit A.

## I. Background

As stipulated to by Goldman Malaysia and set forth in Attachment A to the Plea Agreement (the "Statement of Facts" or "SOF"), from in or about and between 2009 and at least 2014, Goldman Sachs, together with its wholly owned subsidiaries and affiliated entities, including Goldman Malaysia (collectively, "Goldman"), through certain of its agents and employees, and together with others, knowingly and willfully conspired and agreed with others to corruptly provide payments and things of value to, or for the benefit of, foreign officials and their relatives to induce those foreign officials to influence the decisions of 1Malaysia Development Berhad ("1MDB," a strategic investment company wholly owned and controlled by the government of Malaysia), International Petroleum Investment Company ("IPIC," an investment fund wholly owned and controlled by the government of Abu Dhabi) and Aabar Investments PJC (a subsidiary of IPIC), to obtain and retain business for Goldman, including positions as an advisor to 1MDB on the acquisitions of Malaysian energy assets, underwriter on three 1MDB bonds, and underwriter of certain other 1MDB business, including the contemplated initial public offering of 1MDB's Malaysian energy assets.  (SOF ¶ 23).  Goldman employees, agents, and stockholders Tim Leissner (a Participating Managing Director), Ng Chong Hwa (a Managing Director) and Employee 1 (a Participating Managing Director) worked with Malaysian national and 1MDB intermediary Low Taek Jho ("Low") to use Low's connections within the Governments of Malaysia and Abu Dhabi to obtain and retain this and other business for Goldman and, in turn, concealed Low's involvement in the deals from certain employees and agents of Goldman.  (Id.).  In total, Goldman conspired to provide approximately $1.6077 billion to, or for the benefit of, foreign officials and their relatives, of which approximately $18.1 million was paid from accounts controlled by Leissner.  (Id.).

As noted above, on October 22, 2020, Goldman Malaysia waived indictment and pled guilty before this Court, pursuant to the Plea Agreement, to a one-count criminal Information charging it with conspiracy to violate the anti-bribery provisions of the FCPA, and Goldman Sachs entered into a DPA to resolve its criminal exposure for its role in the same conspiracy.

## II. Applicable Guidelines Range and Sentence

As set forth in the Plea Agreement, the parties agree that Goldman Malaysia's applicable Guidelines offense level should be calculated as follows (see PA ¶ 18):

<u>Offense Level—Bribery Conduct (Highest Offense Level)</u>.  Based upon USSG § 2C1.1, the total offense level is 48, calculated as follows:

| | | | |
|---|---|---|---|
| (a)(2) | Base Offense Level | | 12 |
| (b)(1) | More than One Bribe | | +2 |
| (b)(2) | Value of Benefit more than $550 million | | +30 |

2

| (b)(3) | High Level Official Involved | +4 |
|---|---|---|
| | **Total Offense Level** | **48** |

Base Fine.  Based upon USSG § 8C2.4(a)(3), the base fine is $1,607,700,000 (value of the unlawful payments, pursuant to USSG § 2C1.1(d)).

Culpability Score.  Based upon USSG § 8C2.5, the culpability score is 8, calculated as follows:

| (a) | Base Culpability Score | 5 |
|---|---|---|
| (b)(1)(A)(i) | 5,000 or More Employees and Participation by High-Level Personnel | +5 |
| (g)(2) | Cooperation and Acceptance | -2 |
| | **TOTAL** | **8** |

Calculation of Fine Range:

| Base Fine (USSG § 8C2.4(a)(2)) | $1,607,700,000 |
|---|---|
| Multipliers (USSG § 8C2.6) | 1.6 (min)/ 3.2 (max) |
| Fine Range (USSG § 8C2.7) | $2,572,320,000 to $5,144,640,000 |

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that the appropriate total criminal penalty is $2,315,088,000, which reflects a 10 percent discount off the bottom of the applicable Sentencing Guidelines fine range, as well as $606 million in disgorgement.  (PA ¶ 19(a)).

As noted in the Plea Agreement, Goldman Sachs also agreed, concurrent with the DPA, to resolve additional investigations relating to the criminal conduct detailed in the Statement of Facts, including by entering into a Consent Order with the Board of Governors of the Federal Reserve System (the "the Fed") pursuant to which it paid a civil money penalty of $154 million; by settling an Administrative Action filed by the U.S. Securities and Exchange Commission (the "SEC") pursuant to which it agreed to pay $606 million in disgorgement and paid a civil monetary penalty of $400 million; by entering into a Consent Order with the New York State Department of Financial Services (the "DFS") pursuant to which it paid a civil money penalty of $150 million; by resolving the United Kingdom Financial Conduct Authority's and Prudential Regulation Authority's (the "UK FCA and PRA") investigations and having paid a civil penalty to each of $63 million (for a total of $126 million); by resolving the investigation by the Attorney-General's Chambers of the Republic of Singapore (the "Singapore AGC") pursuant to which it paid $122 million; by resolving the investigation of the Monetary Authority of

Singapore (the "Singapore MAS"); by resolving with the Commercial Affairs Department of the Singapore Police Force (the "Singapore CAD"); and by resolving the investigation by the Hong Kong Securities and Futures Commission (the "Hong Kong SFC"), pursuant to which it paid $350 million. (PA ¶ 6(i)). The government agreed to credit the entire penalty amounts paid to the SEC, Fed, DFS, UK FCA and PRA, Singapore AGC and CAD, as well as $100 million of the penalty amount paid to Hong Kong SFC, for a total credit of $606 million in disgorgement and $1,052,000,000 towards the total criminal penalty. (Id. ¶ 19(a)).

As a result, the total criminal penalty owed to the United States is $1,263,088,000. (PA ¶ 19(a)). Pursuant to the Plea Agreement, Goldman Malaysia will pay $500,000 of that total criminal penalty, as well as a mandatory special assessment of $400; Goldman Sachs will pay the remaining $1,262,588,000 pursuant to the DPA within ten days of the entry of judgment in this case. (Id.). In addition, Goldman Sachs has committed to continuing to enhance its compliance program and internal controls, including ensuring that that its compliance program satisfies the minimum elements set forth in Attachment C of the DPA. (Id. ¶ 6(g)).

### III. The Proposed Sentence is Appropriate

The government respectfully submits that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of the proposed sentence, which combines a significant criminal penalty with a commitment by Goldman Sachs to continue to enhance its compliance program and internal controls. The parties arrived at the proposed sentence based in part on the application of guidance issued by the Department of Justice for the evaluation of all FCPA-related cases and for cases involving coordinated corporate resolutions; as a result, the proposed sentence avoids unwarranted sentencing disparities among similarly-situated defendants. See 18 U.S.C. § 3553(a)(6). The proposed sentence is also appropriate given the nature and circumstances of the offense; the history and characteristics of Goldman Malaysia; and the need for deterrence for similar conduct. See 18 U.S.C. §§ 3553(a)(1) & (a)(2).

#### A. Application of Guidance Avoids Unwarranted Sentencing Disparities

As noted above and set forth in the Plea Agreement, the proposed criminal penalty reflects a 10 percent discount off the bottom of the applicable Sentencing Guidelines fine range. This discount reflects Goldman Malaysia's performance across three key factors considered by the government in all FCPA-related cases nationwide: (1) whether the conduct was voluntarily self-disclosed; (2) whether the defendant provided full cooperation; and (3) whether the defendant has engaged in remediation. See Justice Manual 9-47.120, *available at* https://www.justice.gov/jm/jm-9-47000-foreign-corrupt-practices-act-1977 ("FCPA Corporate Enforcement Policy"). That the proposed sentence was based on application of the FCPA Corporate Enforcement Policy is significant, as the policy is critical to avoiding unwarranted sentencing disparities between Goldman Malaysia and other entities that have pled guilty to criminal violations of the FCPA's anti-bribery provisions.

Here, pursuant to the FCPA Corporate Enforcement Policy, Goldman Malaysia and Goldman Sachs were not eligible for more than a 25 percent discount because the entities did

4

not voluntarily and timely disclose the criminal conduct detailed in the Statement of Facts.  (PA ¶ 6(b)).

The proposed sentence also reflects the fact that Goldman Malaysia and Goldman Sachs received partial cooperation credit for the cooperation by Goldman Malaysia and Goldman Sachs with the government's investigation.   As detailed in the Plea Agreement, Goldman Malaysia and Goldman Sachs provided the government with assistance during the course of its investigation, including (i) collecting and producing voluminous evidence located in other countries, (ii) making regular factual presentations and investigative updates to the government, and (iii) voluntarily making foreign-based employees available for interviews in the United States.  (PA ¶ 6(c)).  However, Goldman Malaysia and Goldman Sachs did not receive full cooperation credit because they were significantly delayed in producing relevant evidence, including recorded phone calls in which Goldman Sachs's bankers, executives, and control functions personnel discussed allegations of bribery and misconduct relating to the conduct set forth in the Statement of Facts.  (Id. ¶ 6(d)).  Goldman Malaysia and Goldman Sachs ultimately provided to the government all relevant facts known to them, including information about the individuals involved in the misconduct.  (Id. ¶ 6(e)).  In addition, the proposed sentence reflects the fact that Goldman Malaysia has engaged in remedial measures, including (i) implementing heightened controls and additional procedures and policies relating to electronic surveillance and investigation, due diligence on proposed transactions or clients and the use of third-party intermediaries across business units; and (ii) enhancing anti-corruption training for all management and relevant employees.  (Id. ¶ 6(f)).

In sum, the 10 percent discount is less than the maximum of 25 percent under the FCPA Corporate Enforcement Policy in the circumstances of the case due to the failure of Goldman Malaysia and Goldman Sachs to voluntarily self-disclose the relevant conduct and certain issues with its initial cooperation, but reflects credit for cooperation in the later stages of the government's investigation and remediation efforts.

Finally, the government's decision to credit penalty amounts paid by Goldman Sachs to other domestic and foreign law enforcement and regulatory entities against the total criminal penalty here comports with Department of Justice policy regarding coordination of corporate resolution penalties arising from the same misconduct, and specifically the goal of avoiding "unnecessary imposition of duplicative fines, penalties, and/or forfeiture against" a corporate entity.  See Justice Manual 1-12.100, *available at* https://www.justice.gov/jm/jm-1-12000-coordination-parallel-criminal-civil-regulatory-and-administrative-proceedings.

### B. Consideration of Additional 3553(a) Factors Supports Sentence

The significant criminal penalty in the proposed sentence is also appropriate given the additional competing factors set forth by 18 U.S.C. § 3553(a).  On the one hand, it takes into account the seriousness of the offense; the involvement of high-level Goldman officials in the misconduct; and the need for general deterrence given the difficulty of detecting and prosecuting sophisticated bribery and fraud schemes such as this one.  See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of

the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). On the other, the use of the bottom of the Guidelines as a reference is appropriate given that Goldman has no criminal history, and has agreed to continued cooperation with the government. Moreover, Goldman Sachs has enhanced and has committed to continue to enhance its anti-corruption compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to the DPA.

## IV. Conclusion

For the reasons set forth herein, the parties respectfully request that the Court impose the proposed sentence.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By: /s/ Alixandra E. Smith
Alixandra E. Smith
Drew G. Rolle
Assistant U.S. Attorneys
(718) 254-6370

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Jennifer E. Ambuehl
Nikhila Raj
Trial Attorneys

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Dept. of Justice

By: /s/
David Last
Katherine Nielsen
Trial Attorneys

cc: Defense Counsel (by ECF and email)